People of the State of Illinois on the Relation of Irene J. Altman, and Irene J. Altman, Mother and Next Friend of Faye Diament, a Minor, Plaintiffs-Appellants, v. Board of Education of the City of Chicago, a Body Politic and Corporate, Benjamin C. Willis, General Superintendent of Schools, Thaddeus J. Lubera, Interim Superintendent, Curtis C. Melnick and Margaret Clyne, District Superintendents, Defendants-Appellees.

Gen. No. 51,864.

First District, First Division.

November 20, 1967.

Sidney S. Altman, of Chicago, for appellants.

James W. Coffey, of Chicago (John T. Mehigan, Richard E. Girard, and Michael J. Murray, of counsel), for appellees.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

This is a mandamus action, in which the relator seeks to compel the transfer of her daughter, Faye Diament, from the Hyde Park High School to the South Shore High School, because of emotional and psychological difficulties resulting from her attendance at Hyde Park. After a trial on the merits, the trial court denied the petition and the relator appeals.

The relator, Irene J. Altman, and her family live at 6921 Merrill Avenue, Chicago. Her daughter, Faye Diament, was a June 1964 graduate of the O'Keeffe Elementary School. In September 1964, Faye enrolled in the Hyde Park High School and commenced attending classes. At that time, 71st Street was the south boundary of Hyde Park High School and separated it from South Shore High School.

On April 15, 1965, the Board of Education, by resolution, established a new district (District 22) and extended the north boundary of the South Shore High School to 67th Street, which included the O'Keeffe school and the residence of the relator.

Subsequent to the adoption of the April 15, 1965, resolution, the relator, in person and in writing, requested a transfer of Faye to the South Shore High School. The transfer request was denied because of a Board policy and practice that assignment of elementary school pupils to high school affects future graduating classes only and does not retroactively apply to graduates of preceding years already enrolled in and attending high school.

The petition for writ of mandamus filed August 30, 1966, included allegations that it was the duty of the General Superintendent of the public schools of Chicago "to carry out the legislative acts of the Board of Education by ministering to the needs of the school children of Chicago so that they could get a good common school education as guaranteed by the Constitution of the State of Illinois taking into consideration the social, cultural and psychological needs of the students under his charge," and that "the defendants, or either of them, acting in their own behalf or as agents in behalf of the SCHOOL BOARD OF EDUCATION, have abused their discretion and have acted arbitrarily in denying to the relator's daughter the right to transfer from the Hyde Park High School to the South Shore High School."

The petition alleged the following reasons for the allowance of the transfer:

 a. The Hyde Park High School is further away in distance and in a less safe area.

 b. None of the girl classmates of her own race from the O'Keeffe elementary school now attend Hyde Park; most of them are at South Shore High School.

23

c. The only girl classmates of her own ethnic background in any of her classes at Hyde Park High School, live at the north end of that district and will be going to the new Kenwood High School next year.

d. That the South Shore High School is 3 or more blocks closer to relator's address than the Hyde Park High School and in a safer neighborhood; that the South Shore High School is an integrated school, whereas the Hyde Park High School is not, there being less than 10% white in attendance there, and will be completely resegregated next year.

e. None of her present girl classmates live in her immediate neighborhood which deprives her of a traveling companion.

f. There are no students at Hyde Park with whom she can form a kinship, boys and girls of her peer group associated with her in social, religious, and cultural activities, mostly attend South Shore High School, none going to Hyde Park High School.

g. That with the graduation of her brother, her role at Hyde Park High School will be that of a "loner" which is not conducive to her best interests and will have an adverse effect on her development and psychological welfare, as set forth in a medical report sent to defendant, MARGARET CLYNE, at the suggestions of MR. McKEAG, an Assistant Superintendent on DR. WILLIS' staff.

h. That all of the above information is within the knowledge of the defendants or has been made known to them through letters, conversations and affidavits.

The petition included as an exhibit a letter dated July 15, 1966, from Curtis C. Melnick, District Superintendent, addressed to the relator, in which it is said:

"You have been told on at least four occasions involving personal conferences with the counseling staff at Hyde Park High School, Dr. Blyth, and myself that you have no grounds whatsoever to request a transfer of your daughter, Faye Diament, to South Shore High School. There is no justification for your continuing to phone and to write to change this situation.

". . .

"In summary, there is no basis for granting a transfer to Faye to attend South Shore High School."

Another exhibit attached to the petition was a letter dated August 26, 1966, written by Dr. Eileen C. Stack, Associate Superintendent in charge of Administration, and addressed to the husband of the relator, in which it is said:

". . . Beginning in September, 1965 each new class of graduates from the O'Keeffe and Parkside attendance areas were to be admitted to South Shore High School. Thus in September 1965, ninth graders in the new territory added to South Shore would attend there; in 1966, ninth graders and tenth graders would attend; in 1967, ninth, tenth, and eleventh graders would attend; and in 1968, students in all four years who lived in the annexed territory would attend South Shore.

"Since Faye will be in the eleventh grade in September 1966, she is not eligible to attend South Shore.

"I am sorry that it is not possible for Faye to attend South Shore, but I am sure you understand

25

that the same principle must be applied to all students in a given grade level and to deviate would be to grant preferential treatment to some and not to others."

The answer of the Board included: "The BOARD and its administrative staff at all times since the adoption of the resolution of April 15, 1965, has administered the said resolution by admitting to South Shore only those pupils who have graduated from Parkside and O'Keeffe Elementary Schools subsequent to April 15, 1965." It is further alleged that "more than 200 students who graduated from the Parkside and O'Keeffe Elementary Schools prior to April 15, 1965, are presently enrolled in Hyde Park High School; that the assignment of teachers, programming of courses, procurement of materials, and other education planning in both the Hyde Park and South Shore High Schools has been completed for the 1966–67 school year; . . . and that if the relief prayed for by the Relator in this case is granted to her and to others similarly situated, a great disruption of the program of public education in the City of Chicago would result."

At the trial, the relator and her daughter, Faye Diament, testified in detail as to the reasons for the requested transfer. The testimony of the relator included: "My daughter comes from school at night on the CTA bus and walks. She doesn't have anyone to come home with. I drive her to school in the morning. Her classes are over at approximately two or three. Depending. I leave my job at quarter to five. As to whether either Faye or my son has been attacked in the Hyde Park area, to Faye, nothing has happened. My son has been beaten up."

Eileen C. Stack, called as an adverse witness under section 60, testified that she was the Associate Superintendent in charge of Administration for the Chicago Public Schools, and it was she who made the decision to deny the request for transfer. She stated that she had

not seen a copy of a medical report from Dr. Arthur S. Wagner regarding Faye Diament when she wrote the letter of August 26, 1966. After reading the medical report, she said it would not have affected her decision. She further stated: "We do, in not more than 15 cases throughout the City, at least this has been our experience —issue permits to attend a school outside the usual school for a child who has a physical, medical problem, which, after investigation with the doctors—our own medical staff—finds that another school would be suitable for the child. If I may give you one example of one. We had a child with an active ulcer. She was, after a thorough investigation medically, put into a school which would permit her to go home at noontime so she could have the food she needed."

The relator contends that: (1) It is the constitutional right of a student to receive "a good common school education" (Article VIII, § 1 of the Illinois Constitution), and the Board of Education and its administrative officers and employees, as agents of the General Assembly, are charged with this responsibility; (2) The General Superintendent has the duty to recognize the facts of social and church activities, when called to his attention, as well as residence, in determining the school community, resolving all doubts in the student's favor; and (3) The refusal of the General Superintendent to consider the emotional and psychological welfare of a student seeking transfer is not reasonable and does not comply with the mandate of the Supreme Court.

Authorities cited by relator include People ex rel. Evans v. Cowen, 306 Ill 330, 137 NE 836 (1922), where the Supreme Court said (p 337):

> "[T]he establishment of a high school district must be determined approximately from a consideration of the character of the territory, the place most accustomed to be used by the people residing therein

as a center at which they gather to transact business, attend church and meet socially, and with reference to the school hours of the district being conveniently accessible to all the pupils in the territory of high school age."

The relator argues, "The pro forma manner in which the defendants disposed of the transfer request indicates a dire need for judicial urging in order to accommodate the student's needs. This should include the insistence that the General Superintendent, or his assistants, submit such reports from family physicians to an independent, impartial socio-medical board for review, or accept them as conclusive."

The defendants assert that the issue in this mandamus suit is "whether the trial court properly refused to substitute its judgment for the official action taken by the Board and its General Superintendent of Schools in assigning the minor plaintiff, like all other pupils similarly situated, to attend school in the district where she resides where there is no evidence of bad faith or that the Board acted arbitrarily or capriciously."

The defendants assert that the power and duty to determine what school a pupil shall attend is vested in the Board by section 34–18 of the Illinois School Code (Ill Rev Stats 1965, c 122), which provides:

"The board shall exercise general supervision and management of the public education and the public school system of the city, and shall have power:

". . .

"7. To divide the city into sub-districts and apportion the pupils to the several schools, but no pupil shall be excluded from or segregated in any such school on account of his color, race or nationality. The board shall, as soon as practicable, and from time to time thereafter, change or revise existing sub-districts or create new sub-districts in a manner

28

which will take into consideration the prevention of segregation and the elimination of separation of children in public schools because of color, race or nationality. All records pertaining to the creation, alteration or revision of sub-districts shall be open to the public."

Defendants' authorities cited to show "that the question of what school a pupil shall attend is for determination by the school officials and not for the courts," include Board of Education v. Board of Education, 323 Ill 152, 153 NE 584 (1926), where the Supreme Court said (p 158):

"We have heretofore held . . . that it is not within the province of the courts to determine the question of what high school is the more convenient for high school pupils to attend, and there are many decisions to the effect that such a question is properly left by the legislature to the decision of a ministerial officer."

The defendants also contend that "where a public body such as the Board vested with statutory authority and responsibility exercises its discretionary power as it did in the case at bar, the courts will not substitute their judgment in mandamus proceedings for that of the public body." Cited is People ex rel. Loughry v. Board of Education, 342 Ill App 610, 97 NE2d 615 (1951), where it is said (p 618):

"Our Supreme Court has repeatedly held that in discretionary matters the court will not substitute its judgment for that of an administrative body."

Initially, we note that the medical report of Dr. Arthur S. Wagner regarding Faye Diament is not in the record, although it was shown to Dr. Stack during her interrogation by the relator. However, we think the testimony of the relator and her daughter does show that Faye has a social and emotional problem of some degree, which they

charge to her enrollment and attendance at Hyde Park High School.

■■ Conceding that the school a pupil shall attend is primarily a question for the determination of the school officials, we believe that the school authorities and the courts should be ever concerned with the "social and emotional problems" of the students to see that the students receive "a good common school education."

■■ It is the rule that courts "will not use a writ of mandamus to compel a party to perform an act unless it is affirmatively made to appear that it is his clear duty to do so; the petitioner must establish every material fact necessary to show the plain duty of the respondent before courts will interfere. . . . No intendments will be indulged in to support the issuance of the writ." (People ex rel. Pignatelli v. Ward, 404 Ill 240, 244, 88 NE2d 461 (1949).) If any reasonable doubt exists as to the question of discretion or want of discretion, the courts should hesitate to interfere, preferring to extend the benefit of the doubt in favor of the school officials. MacGregor v. Miller, 324 Ill 113, 118, 154 NE 707 (1926).

■■ Examining this record in the light of the foregoing guidelines, we believe that the relator has failed to establish her right to have the writ issue, and the trial court was correct in denying the petition. While the record indicates that the April 15, 1965, extension of the north boundary of South Shore High School to 67th Street made South Shore more convenient for Faye to attend than Hyde Park, the Board policy and practice, that assignment changes of elementary school pupils to high schools affects future graduating classes only and not graduates of preceding years already enrolled in and attending high school, does not appear to be fraudulent or an oppressive or arbitrary abuse of the discretionary powers of the school officials. Perkins v. Stephens, 288 Ill App 492, 499, 6 NE2d 237 (1937); Board of Education

of Drummer Tp. High School Dist. No. 118 v. Board of Education of Sibley Community High School Dist. No. 115, 323 Ill 152, 158, 153 NE 584.

For the reasons given, the judgment of the Circuit Court is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.