WILLIAM JACKSON, Plaintiff-Appellant, *v.* THE BOARD OF TRUSTEES OF JUNIOR COLLEGE DISTRICT No. 530, Defendant-Appellee.

(No. 73-331;

Fifth District—September 19, 1974.

Drach, Terrell and Deffenbaugh, of Springfield, for appellant.

R. Theodore Clark, Jr., and Gerald D. Skoning, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, and James T. Garrison, of Garrison & Garrison, of Marion, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This case involves an action brought by the plaintiff-relator, William Jackson, for a writ of mandamus and a complaint for a declaratory judgment. The petition for the writ and complaint for declaratory judgment were filed on March 28, 1973, in the circuit court of Williamson County. The defendant-respondent did not file an answer but filed a motion for summary judgment. The motion for summary judgment was heard and granted on July 18, 1973. From the court's order, the plaintiff has brought this appeal.

The facts of this case are basically not in dispute. The plaintiff was a teacher hired by the defendant Board of Trustees to teach in John A. Logan College for the school year 1969-1970. He performed duties as a full-time nontenured faculty member in the athletic department. He was reemployed by the defendant for the academic year of 1970-1971 and then again in 1971-1972. This dispute concerns his failure to be employed for the school year 1972-1973.

The record includes the separate written contract for employment for the academic year 1971-1972. The document itself was one page, set forth the terms of employment, and included "3. That the teacher shall abide by all rules, regulations, and orders established by the Board." The college handbook of John A. Logan College also was in existence and use during all times relevant hereto. It provided among other things that a nontenured faculty member would be notified annually in writing on or before March 15 of the year of his employment as to whether or not his appointment has been renewed and if renewed, the terms and conditions of employment for the next academic year.

The plaintiff was not notified in writing that he was not going to be reemployed until May 17, 1972. The plaintiff had however, on April 7, 1972, been orally advised by the dean of instructional services and the

chairman of the department of health and physical education that he would not be retained in the 1972-1973 academic year due to cost cuts.

The Board of Trustees on March 7, 1972, at a regular meeting of the Board, unanimously passed a resolution directing the administration to hold in abeyance the annual written notification requirement set forth in the college handbook. The Board met again on April 6, 1972, and at that time voted five for and one abstention to continue to hold in abeyance until and including April 26, 1972, the annual written notifications of appointment renewal.

At no time has the defendant Board of Trustees ever taken any action or notified the plaintiff that he would not have his contract renewed for the 1972-1973 academic year other than the notice given first orally and then in writing by the dean of instruction.

The college handbook also contains a section called "Grievance Procedure".[1] This section, after setting forth the various procedure for handling grievances, sets *"Time Limits"* which states that all grievances must be brought within 10 school days after the event that occasioned the grievance occurred.

The plaintiff-appellant presents but one issue for review. "Must the defendant Board of Trustees give the plaintiff written notice of nonrenewal on or before March 15, 1972?" However, before we examine the issue presented by the plaintiff we shall first examine the status of the pleadings of the plaintiff and appropriateness of the remedy sought.

The plaintiff filed a petition for a writ of mandamus to issue, to compel the defendant to "forthwith assign the petitioner, William Jackson, as an instructor of physical education at John A. Logan College for the 1972-1973 academic year at a salary determined by the Board to be commensurate with other salaries of faculty members of similar experience and service. * * *"

---

[1] The pertinent language of which is:
"*GRIEVANCE PROCEDURE*
*Definition.* A grievance is a difference of opinion with respect to the meaning or application of Board policies as set forth in the College Handbook which relates directly to salaries, fringe benefits, and employment conditions.
*PROCEDURE.* A grievance shall be processed as follows:
STEP 1: Any faculty member who has a grievance shall submit it in writing to the appropriate Department Chairman or person designated by the Board for this purpose. The grievance shall set forth in detail all relevant facts upon which it is based.
STEP 2: * * *
STEP 3: * * *
*Time Limits.* No grievance shall be entertained or processed unless it is submitted within ten (10) school days after the event or occurrence given rise to the grievance.
Adopted: December 1, 1970."

The plaintiff argues that because the Board failed to notify him by March 15, 1972, he should therefore be automatically employed for the following academic year. He asserts that:

"The Defendant Board of Trustees having failed to comply with the terms of its own rules and regulations requiring that the probationary teachers be given notice on or before March 15 as to whether or not they will be reemployed, the Plaintiff William Jackson is entitled to be considered as reemployed as he had an expectancy of employment, which under the circumstances, could not be denied to him. *Board of Regents vs. Roth*, 408 U.S. 564 (1972); *Perry v. Sinderman*, 408 U.S. 593 (1972)."

We have read and studied the cited *Roth* and *Perry* cases. We find however that both cases are decided on grounds and issues far removed from the present cause. Indeed the only similarity is that those cases also involved college teachers. Both of these cases were considered together by the United States Supreme Court and both hold that the teacher did not have a right to a hearing because of alleged violations of constitutional rights. These cases shed no light on the case before us.

There are but two alternatives to the problem presented by this case. First, we can assume that the rules and regulations of the "College Handbook" are binding upon the college vis-a-vis the requirement of notification to nontenured instructors. Second, we can determine that the rules and regulations are not binding upon the college. We shall consider the latter first.

■■ Taking the position that the college handbook is not binding upon the college would require that we conclude that the basis of the dispute between the plaintiff and the defendant would rest squarely upon the provisions of the employment contract and any applicable statutes. As we note from the four corners of that instrument the plaintiff is able to find little support for his position. The contract provides for employment up and until June 11, 1972, and is silent as to any future employment. Likewise, a review of the applicable statutes reveals no support for plaintiff's alleged right to written notification. Unlike the Illinois School Code (Ill. Rev. Stat., ch. 122, par. 24—1 *et seq.*), the Public Junior College Act (Ill. Rev. Stat., ch. 122, par. 101—1 *es seq.*) does not require that a junior college board give notice of nonrenewal to a nontenured faculty member, or that such a faculty member *is presumed* to be employed for the next academic year if he receives untimely or insufficient notice. Thus, neither the contract nor the applicable statute afford the plaintiff the right to future employment.

■■ We next consider the other alternative and assume that the college handbook is binding upon the college. Making this assumption however,

we must conclude that the entire college handbook is binding upon the parties hereto. Indeed the plaintiff has specifically agreed to so be bound under paragraph 3 of the employment contract. This being the case, we then by necessity refer to the grievance procedures as set forth in the handbook. The plaintiff would have been entitled to notice on March 15 and would have a right to and should have proceeded under the grievance procedures as set up by the college handbook. Thus even if we assume that the college is bound by the handbook the plaintiff's requested relief must fail because of the failure of the plaintiff to pursue his administrative remedies within the time set forth. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564; *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574; *United Steelworkers v. Enterprise Wheel & Car Corporation*, 363 U.S. 593; *Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionary Workers*, 370 U.S. 254. See also *Gordan v. Thor Power Tool Co.*, 55 Ill.App.2d 389, 205 N.E.2d 55.

Finally assuming *ad arguendo* that the plaintiff would be entitled to some relief under the rationale that the university failed to follow its own rules and that the plaintiff was not required to pursue his contracted grievance procedure, then we must determine whether the proposed remedy is appropriate.

■■■ To obtain mandamus relief the relator, the plaintiff herein, must show not only a clear right to the relief sought to be compelled, but also a corresponding duty on the part of the respondent, the defendant Board of Trustees, to do the act sought to be compelled. (*People ex rel. Cantu v. School Directors*, 58 Ill.App.2d 282, 208 N.E.2d 301.) Furthermore, when a mandamus action is brought against school officials and any reasonable doubt exists as to the question of discretion or want of discretion, the court should hesitate to interfere, preferring to extend the benefit of doubt in favor of the school officials (*People ex rel. Altman v. Board of Education*, 90 Ill.App.2d 21, 234 N.E.2d 362), as long as such action is not unreasonable, arbitrary or discriminatory. *People ex rel. Loughry v. Board of Education*, 342 Ill.App. 610, 97 N.E.2d 615, *cert. denied*, 342 U.S. 944, 96 L.Ed. 702, 72 S.Ct. 557, *rehearing denied*, 343 U.S. 921, 96 L.Ed. 1334, 72 S.Ct. 675.

■■ The record before us is barren of any allegation or evidence·that the action complained of was unreasonable, arbitrary or discriminatory. In its absence the requested remedy of mandamus would be inappropriate.

In view of the foregoing, we find that the trial court was correct in denying the petition for mandamus·and granting defendant's, respond-

ent's, motion for summary judgment. The judgment of the circuit court of Williamson County is, therefore, affirmed.

Judgment affirmed.

CARTER, J., concurs.

Mr. PRESIDING JUSTICE G. MORAN concurring in part and dissenting in part:

The majority opinion has failed to consider several important aspects of this case. My consideration of them requires that I concur in part and dissent in part.

To begin with, the nonrenewal of appellant's contract was invalid because no action was ever taken on the contract by the Board of Trustees. The Board voted to suspend the notice requirement and the dean of instructional service gave appellant oral and written notice of nonrenewal, but there is no indication that the Board either authorized or ratified his acts. While the Public Junior College Act (Ill. Rev. Stat., ch. 122, par. 101—1 et seq.), does not expressly require that the board itself take action, the authority to dismiss faculty is vested in the board (Ill. Rev. Stat., ch. 122, par. 103—42). The Illinois cases in point have not dealt with the provisions of the Public Junior College Act, but without the benefit of language expressly limiting the power to dismiss faculty to the board of education under other sections of chapter 122, they have uniformly held that the board of education must itself exercise its authority not to renew a teacher's contract. (Elder v. Board of Education, 60 Ill.App.2d 56, 208 N.E.2d 423; Board of Education v. Rockford Education Association, 3 Ill.App.3d 1090, 280 N.E.2d 286; Bessler v. Board of Education, 11 Ill.App.3d 210, 296 N.E.2d 89.) These decisions rest on the sound rationale that where the people have chosen members of the board to exercise discretionary powers, such powers should only be exercised by those in whom they have placed their confidence. (Stroh v. Casner, 201 Ill.App. 281.) Neither the fact that different sections of chapter 122 were involved nor their added notice provisions (see Ill. Rev. Stat., ch. 122, par. 24—11) disturbs the logic of the rule. The actions of the dean of instructional service should be considered of no effect.

The majority analyzes appellant's arguments by examining his right to notice of nonrenewal alternatively assuming the college handbook does apply and does not apply. Although the handbook was not expressly incorporated, the only reasonable and fair construction of the language of section three of the contract is that the handbook was part

of the contract as a rule or regulation. Any interpretation of the words excluding it would be illogical and make the language of the section meaningless. Furthermore, given the nature of the regulations contained in the handbook, it is clear that rights and duties were imposed on both parties. Appellant was entitled to notice of nonrenewal before March 15 as a contract right. By the same logic, the appellee Board argued it had the right to suspend the notice requirement. I cannot find any specific basis in the Public Junior College Act or college handbook for this asserted power to unilaterally alter contract rights of employees. Under Ill. Rev. Stat. 1971, ch. 122, par. 103—42 the Board has the power "to establish policies governing their employment or dismissal   *   *   *," but this general grant of authority cannot be construed to support the Board's unilateral decision to alter an employee's contract rights. If they were allowed such power, they could redefine any employee's duties and conditions of work by holding in abeyance any regulation they had promulgated not affirmatively required by statute. The Board has no such authority to arbitrarily tamper with existing contract rights. The Board must meet its contractual obligations like any other agency of the state. Moreover, even assuming the Board had such extraordinary authority, this conclusion would not affect the Board's duty to take action itself concerning the nonrenewal of appellant's contract.

The majority raises as a defense that appellant failed to comply with the grievance procedure set out in the handbook. A close examination of the terms of the procedure reveals that it was intended to cover complaints concerning working conditions, not disputes about dismissal or non-compliance with the formal requirements for discharge. If not totally inapplicable, the procedure is so ill-suited to provide the employee with a reasonable chance to defend against the administration's actions that the Board should not be able to set up the defense of failure to exhaust administrative remedies when the remedies provided are futile.

While the Board wrongfully failed to comply with the procedural requirements for not renewing appellant's contract, the relief appellant seeks, mandamus, is inappropriate in this case. The majority correctly states the rule that to obtain mandamus relief, the relator must show "not only a clear right to the relief sought to be compelled, but also a corresponding duty on the part of the respondent, the defendant Board of Trustees, to do the act sought to be compelled   *   *   *." Appellant has failed to demonstrate a clear right to reinstatement or a clear duty on the part of the Board to do so. The injury appellant has suffered though real, does not create a right to such an extraordinary remedy. Similarly, the Board's omissions cannot be reasonably deemed to create

such a great duty. Since appellant received verbal notice shortly after March 15, the appellees' conduct cannot be considered arbitrary. Appellees' decision not to renew appellant's contract due to financial problems was not unreasonable, arbitrary or discriminatory. For these reasons, I concur in the court's judgment that mandamus is inappropriate.