HOWARD ZELENKA et al., Plaintiffs-Appellants, v. THE CITY OF CHICAGO et al., Defendants-Appellees.

First District (2nd Division) No. 85—3603

Opinion filed February 3, 1987.

Goldman & Marcus, of Chicago (Arthur R. Ehrlich, of counsel), for appellants.

Judson H. Miner, Acting Corporation Counsel, and Jacobs, Burns, Sugarman & Orlove, both of Chicago (Mary K. Rochford and Julie Elena Brown, Assistant Corporation Counsel, Steven E. Fine and Stephen B. Horwitz, of counsel), for appellees.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs appeal from the circuit court's rulings dismissing their complaint and failing to compel arbitration. On appeal, plaintiffs contend that the trial court erred: (1) when it held that the statute of limitations for an action against defendant for breach of its duty of fair representation should be 90 days as set forth in the Illinois Arbitration Act; (2) in dismissing their claims against defendant because plaintiffs alleged sufficient facts to establish that defendant breached its duty of fair representation; (3) in ruling that plaintiffs were required to exhaust their grievance remedies against defendant before bringing a cause of action against the city of Chicago for breach of

contract; and (4) in denying plaintiffs' motion to compel arbitration because plaintiffs lacked standing under the collective-bargaining agreement.

Plaintiffs were firefighters employed by defendant city of Chicago (city) and members in good standing of defendant Chicago Firefighters Union, Local 2, International Association of Firefighters, AFL-CIO (union). Each of the 35 plaintiffs retired on disability pensions at various times between January 1, 1981, and October 1, 1983, after having been on sick/injury or occupational disability leave for one year.

All of the plaintiffs were subject to a collective-bargaining agreement (agreement) between the union and the city entered into on March 1, 1982. Section 7.1 of the agreement provides that all employees are entitled to an annual paid vacation. Section 7.3 of the agreement provides that an employee who becomes injured or disabled shall receive his "usual salary" for a 12-month period. Plaintiffs claim that the provision guaranteeing "usual salary" required the payment of vacation benefits accrued during the 12-month sick leave.

The agreement provides for a three-step grievance process. Step one provides for the employee, with or without a union representative, or the union alone, to take a grievance up with the city. Step two of the procedure allows the union, with or without the employee, to appeal an unresolved grievance to the fire commissioner. If the grievance remains unresolved after step two, "either party may, by written notice to the other party, invoke arbitration." The agreement provides that an employee shall take up a grievance with the employer within 10 days of its occurrence or the date on which the employee knew or should have known of its occurrence. The agreement further provides that any grievance not filed within the established time limits shall be waived.

Two of the plaintiffs, Harold Strus and Edward Kramer, filed grievances against the city for failure to compensate plaintiffs for lost vacation pay. Kramer retired on or about March 28, 1981, and filed his grievance on June 15, 1983. Strus retired on or about February 2, 1982, and filed his grievance on May 11, 1983. Both of these grievances were rejected for being untimely. Additionally, on June 15, 1983, defendant union refused to arbitrate these grievances.

Fire department employee Norman McCrea filed grievances protesting an alleged deprivation of vacation benefits during his one-year sick leave. He retired on or about December 15, 1982, and filed his grievance on or about January 4, 1983. On December 15, 1983, the city and union entered into a settlement agreement on McCrea's

grievance. The settlement agreement provided that all employees on a 12-month sick/injury leave as of December 15, 1983, would be compensated for their accrued vacation time. Because plaintiffs were on sick/injury leave prior to December 15, 1983, they were not compensated by the McCrea agreement.

On April 9, 1984, approximately four months after the McCrea settlement, plaintiffs filed this action against the city claiming breach of contract and against the union claiming breach of the duty of representation. Both the city and union filed motions to dismiss. On February 28, 1985, the circuit court granted the city's motion to dismiss on the ground that plaintiffs had failed to allege exhaustion of their remedies under the agreement. The circuit court also granted the union's motion to dismiss because the claim against the union alleging breach of duty of fair representation was not timely. On April 19, 1985, plaintiffs also filed a motion to compel arbitration. On August 9, 1985, the circuit court denied the plaintiff's motion to compel arbitration. On November 8, 1985, the circuit court dismissed plaintiffs' third amended complaint with prejudice. Plaintiffs now appeal from the dismissal of their complaints and the denial of their motion to compel arbitration.

■ Plaintiffs first contend that the trial court erred when it held that the statute of limitations for an action against defendant union for breach of its duty of fair representation should be 90 days as set forth in the Illinois Arbitration Act. We find that the trial court was incorrect in holding that a 90-day statute-of-limitations period was applicable. The Supreme Court in *DelCostello v. International Brotherhood of Teamsters* (1983), 462 U.S. 151, 76 L. Ed. 2d 476, 103 S. Ct. 2281, held that the six-month period of limitations provided in section 10(b) of the National Labor Relation Act (29 U.S.C. par. 160(b) (1982)), should govern in hybrid section 301/fair representation suits both as to the claim against the employer and the claim against the union. *Marston v. La Clede Cab Co.* (E.D. Mo. 1983), 571 F. Supp. 1243, 1245.

*DelCostello* is dispositive of this issue because plaintiffs have filed a hybrid section 301/fair representation suit alleging that the city breached their collective-bargaining agreement and that the union breached its duty of fair representation. Therefore, we find that a six-month period of limitation is applicable.

There is a dispute as to when the statute of limitations commenced. Plaintiffs claim that December 15, 1983, the day that the McCrea settlement was entered into, is the proper time for the statute to begin running. Plaintiffs filed their complaint on April 8, 1984,

over four months later. Defendant union claims that the statute of limitations began to run when plaintiffs retired without being compensated for their vacation benefits. Normally, "a hybrid section 301/fair representation claim against both an employer and a union accrues on the date the employee's grievance is finally rejected and his opportunity to gain reinstatement through the contractual grievance process is aborted." (*Marston v. La Clede Cab Co.* (1983), 571 F. Supp. 1243, 1246.) In this instance, however, only two plaintiffs, Edward Kramer and Harold Strus, filed grievances on June 15, 1983, and May 11, 1983, respectively. Both of these grievances were rejected for being untimely. Additionally, on June 15, 1983, defendant city refused to arbitrate these grievances. On April 8, 1984, over four months after the McCrea settlement, plaintiff members of the union filed this action against the city claiming breach of contract and breach of the duty of fair representation by the union.

■ We find that the statute of limitations commenced 10 days after the plaintiffs retired. Article X, section 10.2 of the instant labor agreement provides that an employee shall take up his grievance to the "Employer's authorized representative within ten (10) days of its occurrence, or if later, the date on which either the employee or his Union Steward knew or should have known of its occurrence." Plaintiffs argue that the statute of limitations began on the date of the McCrea settlement; that they were not aware of their right to vacation pay until that date. This position is untenable. Plaintiff's collective-bargaining agreement provides that when an employee is separated from employment due to retirement he "shall be compensated for all unused vacation days accumulated at the employee's regular salary rate at the time of separation." Thus, it is clear that plaintiffs should have been aware that they had a right to vacation pay at the time of retirement. While the McCrea settlement agreement amended the collective-bargaining agreement, it merely clarified the city's policy on vacation benefits. The plaintiffs in their brief to this court admit this much.

■ By this ruling, we only hold that when an employee has failed to exhaust his grievance remedies, the statute of limitations in a hybrid 301/fair representation suit commences when the time for bringing a grievance under employee's contract has expired. Thus, this ruling in no way modifies the general rule that the statute of limitations in a hybrid 310/fair representation suit begins to run when a plaintiff-employee has exhausted his grievance procedures as specified by the collective-bargaining agreement.

Only one plaintiff in the complaint dated April 10, 1984, filed

within six months of his retirement. Plaintiff Richard S. Kenney retired on October 11, 1983. Yet, he failed to file a grievance with the union. The only two plaintiffs to file grievances, Kramer and Strus, had their grievances rejected on June 15, 1983, and May 11, 19, and June 15, 1983, respectively. Thus, their claims were time barred because they filed suit more than six months after their grievances were finally rejected. Only plaintiff Kenney has filed suit in this case within the statute of limitations. We next address whether Kenney, as all plaintiffs here alleged, has shown that the union breached its duty of fair representation and that he is entitled to arbitration. Plaintiffs allege that union stewards knew or reasonably should have known of the city's violation of the contract within 10 days of its occurrence and such stewards failed to bring any such grievance to the employer or notify the plaintiffs that they had a grievance.

The instant collective-bargaining agreement provides in pertinent part:

"GRIEVANCE PROCEDURE

SECTION 10.1 Definition

*Any grievance* or *dispute* which may arise between the parties, including the application, meaning or interpretation of this Agreement, shall be settled in the following manner.

SECTION 10.2 Procedure, Steps and Time Limits

Step 1. *The employee,* with or without the Steward (or the Steward alone in the case of a Union grievance,) *shall take up the grievance* or dispute in writing or orally with the Employer's representative within ten (10) days of its occurrence, or if later, the date on which either the employee or his Union Steward knew or reasonably should have known of its occurrence. \*\*\*" (Emphasis added.)

■ The contract does not require the union steward to take up an employee's grievance to the employer or to inform the employee of his grievance rights. The contract only provides that an employee may file his grievance within 10 days of its occurrence or when he or his union steward knew or should have known of its occurrence. This limitation on the time for which an employee may file a grievance does not by itself translate into an affirmative duty upon the union steward to inform an employee of his grievance rights or to bring up an employee's grievance to an employer. Therefore, it is clear that the union did not breach any of its contractual obligations.

Section 13.3 of the collective-bargaining agreement provides that the "Union's duty of fair representation shall be carried out in conformity with the standard enunciated by the Supreme Court in *Vaca*

*v. Sipes* (1967), 386 U.S. 171." The court wrote that "[a] breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." (*Vaca v. Sipes* (1967), 386 U.S. 171, 190, 17 L. Ed. 2d 842, 857, 87 S. Ct. 903, 916.) Therefore, mere negligence is not enough, a union member must show that his union deliberately failed to properly pursue his claim against the employer. *Superczynski v. P.T.O. Services, Inc.* (7th Cir. 1983), 706 F.2d 200.

■ While a union's misconduct must be intentional to constitute a breach of its duty, "employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by the employer and union as the mode of redress." (*Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 652, 13 L. Ed. 2d 580, 583, 85 S. Ct. 614, 616.) Thus, it is clear that the employee, not the union, has the duty to bring grievances to the employer.

■ Plaintiffs also claim that the union gave support to Norman McCrea in his successful attempt to get back vacation pay from the city while intentionally excluding plaintiffs from the terms of the settlement agreement. McCrea filed his grievances within a few days of his retirement. The settlement agreement was entered into on December 15, 1983. It would have been illogical to include plaintiffs in the terms of McCrea's settlement. Only two plaintiffs had filed grievances and their claims had already been rejected as untimely. None of the other plaintiffs had even filed grievances at that time or at any time. Thus, it is clear that treating the well-pleaded facts as true, there can be no finding that Kenney or the other plaintiffs were "similarly situated" with McCrea or that plaintiffs were treated in an arbitrary or capricious manner.

■ Plaintiffs next contend that the circuit court was incorrect in ruling that plaintiffs were required to exhaust their remedies against the union before bringing this cause of action against the city. When an employee's claim is based upon breach of the collective-bargaining agreement, that employee is bound by the terms of that agreement which governs the manner in which contractual rights may be enforced. (*Vaca v. Sipes* (1967), 386 U.S. 171, 184, 17 L. Ed. 2d 842, 854, 87 S. Ct. 903, 913-14.) "For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedure established by the bargaining agreement." (386 U.S. 171, 184, 17 L. Ed. 2d 842, 854, 87 S. Ct. 903, 914.) An employee must afford the union the opportunity to act on his behalf. (*Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 653, 13 L. Ed. 2d 580, 583, 85 S. Ct. 614, 616-17.) There are however, several excep-

tions to the exhaustion requirement. One such exception describes a situation where the effort to proceed formally with contractual or administrative remedies would be wholly futile. *Glover v. St. Louis-San Francisco Ry. Co.* (1969), 393 U.S. 324, 330, 21 L. Ed. 2d 519, 524, 89 S. Ct. 548, 551-52 (court found that the "futility" exception should excuse failure to exhaust remedies where railroad employer and union denied promotions to plaintiffs for racial reasons and where plaintiffs repeatedly complained to union of such discrimination); *Schultz v. Owens-Illinois Inc.* (7th Cir. 1982), 696 F.2d 505 (court found that the "futility" exception should excuse employee's failure to exhaust grievance procedures where an employee's identical claim was previously rejected by union and where defendant's union and employer litigated claim despite plaintiff's untimely grievance).

In the instant case, plaintiffs do not argue that they have exhausted their grievance remedies, but rather that it would have been futile for them to file such grievances. We find that plaintiffs have not alleged sufficient facts to support this allegation. The only plaintiffs to file grievances, Strus and Kramer, have not alleged any facts which suggest that had their grievances been filed timely the union would not have processed them. Yet, plaintiffs also argue that other employee-plaintiffs, such as Kenney, failed to file grievances because Strus and Kramer's grievances were denied. As such, these plaintiffs argue that they should have been excused from failing to exhaust their remedies under the futility exception. This contention has no merit. The futility doctrine is appropriate where a grievance has been denied on the substantive merits (as opposed to procedural timeliness), and other employees, with that knowledge, would have little reason to think that a grievance by them would result in any different decision on the merits. Here, Kenney and the other plaintiffs would have no reason to think that their grievances would be ignored by the union merely because Strus and Kramer's grievances were rejected for untimeliness. Indeed, as the union demonstrated in the McCrea settlement agreement, the union was more than willing to process timely grievances dealing with vacation pay due to retired employees.

Plaintiffs next contend that the circuit court erred in denying plaintiff's motion to compel arbitration because plaintiffs lacked standing under the collective-bargaining agreement to compel arbitration. In order to determine whether a person or entity is entitled to compel arbitration, it is necessary to examine the specific language of the collective-bargaining agreement. (*Board of Education v. Meridian Education Association* (1983), 112 Ill. App. 3d 558, 445 N.E.2d 864.) This is so because the collective-bargaining agreement defines the

rights and liabilities of the parties subject to the agreement and the manner in which contractual obligations may be enforced. (*Vaca v. Sipes* (1967), 386 U.S. 171, 184, 17 L. Ed. 2d 842, 854, 87 S. Ct. 903, 914.) Here, the collective-bargaining agreement provides, in part, a three-step grievance procedure. Step one provides for the employee, with or without a union representative, or the union alone to take up a grievance with the city. Step two of the procedure allows the union, with or without the employee, to appeal an unresolved grievance to the fire commissioner. If the grievance remains unresolved after step two, "*either party*, by written notice to the *other party*, may invoke arbitration." (Emphasis added.)

 The language of the agreement is clear and unambiguous. While an employee may initiate a grievance and attempt to resolve it through step one without the union, all subsequent action must be initiated by the union. Moreover, arbitration may only be invoked by "parties" to the agreement. Only the union and the city are "parties" to the agreement. The contract is signed only by the union and the city and the obligations relate to them as well. Furthermore, even if "parties" referred to individual employees, all three steps of the grievance process must be completed before arbitration may be requested by a party. Of the 35 plaintiffs, only two attempted to proceed through each of these steps and both of these claims were found untimely. Therefore, it is evident that plaintiffs did not have the right or ability to compel arbitration.

Plaintiffs cite *Board of Education v. Meridian Education Association* (1983), 112 Ill. App. 3d 558, 445 N.E.2d 864, for support of their position. In *Meridian*, however, it was the union that invoked arbitration, not employees. Similarly, *Mitchell v. Hercules Inc.* (S.D. Ga. 1976), 410 F. Supp. 560, is inapplicable. In *Mitchell*, the labor contract allowed an individual to initiate arbitration without union intervention. No such specific right to compel arbitration is provided by the collective-bargaining agreement here. Therefore, we find the circuit court was correct in denying plaintiff's motion to compel arbitration.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.