Filed 1/23/08          NO. 4-07-0262

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| JUDITH STOLL, | ) | Appeal from |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Champaign County |
| THE UNITED WAY OF CHAMPAIGN COUNTY, | ) | No. 06L223 |
| ILLINOIS, INC., an Illinois Not-for- | ) | |
| Profit Corporation, | ) | Honorable |
| Defendant-Appellee. | ) | Jeffrey B. Ford, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the opinion of the court:

In October 2006, plaintiff, Judith Stoll, filed a breach-of-contract complaint against defendant, the United Way of Champaign County, Illinois, Inc. (United Way), an Illinois not-for-profit corporation and plaintiff's former employer. The next month, the United Way filed a motion to dismiss the complaint under section 2-619(a)(9) of the Code of Civil Procedure (Procedure Code) (735 ILCS 5/2-619(a)(9) (West 2006)). After a March 2007 hearing, the trial court granted the United Way's motion and dismissed plaintiff's complaint with prejudice.

Plaintiff appeals, contending the trial court erred by granting the United Way's motion to dismiss because she (1) had directly enforceable contractual rights or (2) was a third-party beneficiary of a contract between the United Way and the labor union to which she belonged, the American Federation of Labor and Congress of Industrial Organizations of Champaign County (AFL-

CIO).  We affirm.

## I. BACKGROUND

In her complaint, plaintiff alleged that in April 2000, the United Way hired her as an AFL-CIO community-services liaison (Liaison).  On June 24, 2003, she began negotiating with United Way representatives on a memorandum of understanding, which was to govern, <u>inter</u> <u>alia</u>, the terms and conditions of her employment by the United Way as the Liaison.  Additional negotiations occurred on four other dates.  As a result of the negotiations, a memorandum of understanding between the United Way and the AFL-CIO (Memorandum) was created.  After becoming aware of the Memorandum's contents, plaintiff elected to continue her employment with the United Way under the Memorandum's terms and conditions.

The Memorandum began by stating it recognized the desires of the United Way and the AFL-CIO to cooperate in providing human-care services regardless of demographics or need.  The Memorandum then declared its purpose was "to clearly identify the intent of all concerned, to assure coordination, and to provide maximum cooperation and utilization of all resources and efforts of both organizations."  It also outlined the responsibilities, procedures, and objectives of a full-time Liaison.  The Memorandum was effective from July 1, 2003, to June 30, 2007.

The Memorandum did address discipline of the Liaison,

and provided, in pertinent part, the following:

"[T]he United Way will follow the tenets of progressive and corrective discipline.  Progressive discipline is intended to correct employee deficiencies and shall consist of any or all of the following:

    a.) Oral warning

    b.) Written reprimand and remediation plan, as needed

    c.) Suspension

    d.) Discharge

It is understood by all parties that severe infractions of United Way policy and procedures, [c]ode of [e]thics[,] or violation of law or regulations may lead to immediate discharge.

*  *  *

When [the] United Way is contemplating discipline[,] a pre[]disciplinary meeting will be held.  [The] United Way shall notify the Liaison and the [AFL-CIO] of the meeting and the reason(s) for the contemplated discipline.  The Liaison shall be informed of her/his rights to representation by the [AFL-

- 3 -

CIO] and shall be entitled to representation at all times during this disciplinary process. The Liaison and the [AFL-CIO] shall be given the opportunity to rebut the reasons for such contemplated discipline.

In the event disciplinary action is taken against the Liaison, the United Way shall promptly furnish the [AFL-CIO] and the Liaison with written notice of such disciplinary action and the reasons therefor."

Additionally, the Memorandum set forth a grievance-resolution procedure for when a dispute arose regarding the enforcement of the Memorandum's provisions that affected the Liaison. The Memorandum also recognized the following:

"The [AFL-CIO] as the exclusive bargaining representative of the Liaison reserves the right to process disputes on behalf of the Liaison. The [AFL-CIO] reserves the right to advance the dispute, withdraw from representation of the dispute, or consider the dispute settled at the appropriate step of the process based on the facts of the dispute. If the Liaison has a desire to advance the dispute, including moving the

issue to mediation between the levels sup-

ported by the [AFL-CIO] s/he may do so at the

Liaison's own expense."

The Memorandum is signed by Mary McGrath, the chair of the United Way's board of directors; Tamara Lemke, president and chief executive officer of the United Way; Kevin Sandefur, AFL-CIO president; and cochairs of the AFL-CIO community services committee, Dorinda Miller and Mike Spillers.

In March 2005, Lemke placed plaintiff on administrative leave from her position as Liaison. Prior to placing her on administrative leave, the United Way had not taken any disciplinary action against plaintiff. In April 2005, Lemke terminated plaintiff's employment with the United Way. During her entire employment with the United Way, plaintiff was a member of the AFL-CIO.

In October 2006, plaintiff filed the instant breach-of-contract complaint in the trial court, asserting the Memorandum created a contractual right, enforceable by her, to the disciplinary procedures contained in the Memorandum and bound the United Way to follow those procedures; and thus the United Way breached the contract by failing to do so. Plaintiff denied committing any act or infraction sufficient to justify her termination by the United Way.

The United Way filed a section 2-619 motion to dismiss,

asserting plaintiff lacked standing to bring the complaint because plaintiff was not a party to the Memorandum and the Memorandum contained no provision providing third-party beneficiary status to plaintiff. The United Way filed a memorandum in support of its motion to dismiss. In January 2007, plaintiff filed a memorandum of law in opposition to dismiss. Thereafter, the United Way filed a response to plaintiff's memorandum of law.

In March 2007, the trial court held a hearing on the United Way's section 2-619 motion to dismiss. After hearing the parties' arguments and considering their memoranda of law, the court granted the United Way's motion, finding plaintiff lacked standing to bring her suit because she was not a party to the agreement and not a third-party beneficiary. This appeal followed.

## II. ANALYSIS

In this case, plaintiff challenges the trial court's dismissal with prejudice of her complaint pursuant to section 2-619 of the Procedure Code (735 ILCS 5/2-619 (West 2006)). With a section 2-619 motion to dismiss, the movant "admits the legal sufficiency of the plaintiff's complaint but asserts an affirmative defense or other matter that avoids or defeats the plaintiff's claim." DeLuna v. Burciaga, 223 Ill. 2d 49, 59, 857 N.E.2d 229, 236 (2006). "In ruling on such a motion, the court must interpret all pleadings and supporting documents in the

light most favorable to the nonmoving party." Melena v. Anheuser-Busch, Inc., 219 Ill. 2d 135, 141, 847 N.E.2d 99, 103 (2006). A section 2-619 motion presents a question of law, and thus our review of the trial court's ruling on the motion is de novo. DeLuna, 223 Ill. 2d at 59, 857 N.E.2d at 236. Additionally, this court may affirm the trial court's judgment on any basis that is supported by the record. Krilich v. American National Bank & Trust Co. of Chicago, 334 Ill. App. 3d 563, 573, 778 N.E.2d 1153, 1163 (2002).

Plaintiff's complaint alleges the United Way, her former employer, breached the Memorandum when it terminated her from the Liaison position. Illinois law has established the presumption that employment contracts are at will and thus terminable by either party. However, the presumption may be overcome by showing the parties agreed otherwise. McInerney v. Charter Golf, Inc., 176 Ill. 2d 482, 485, 680 N.E.2d 1347, 1349 (1997).

A. Policy Statement

Plaintiff asserts that, based on Duldulao v. Saint Mary of Nazareth Hospital Center, 115 Ill. 2d 482, 505 N.E.2d 314 (1987), the Memorandum created enforceable contractual rights, and plaintiff was entitled to the disciplinary proceedings set forth in it. In Duldulao, 115 Ill. 2d at 490, 505 N.E.2d at 318, our supreme court held an employee handbook or other policy

statement creates enforceable contractual rights when the traditional requirements for contract formation are present.  The Duldulao court explained contract formation occurs in such cases if the following conditions are present:

> "First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made.  Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer.  Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement."  Duldulao, 115 Ill. 2d at 490, 505 N.E.2d at 318.

The court further explained that, under those conditions, the employee's continued work is the consideration for the promises contained in the policy statement.  Duldulao, 115 Ill. 2d at 490, 505 N.E.2d at 318.

Here, plaintiff fails to allege how the Memorandum was an offer to her as an United Way employee or that she even believed it was such an offer.  The Memorandum's contents indicate it is an agreement between the United Way and the AFL-CIO to

- 8 -

provide human-care services through the Liaison.  It is signed by executives of both organizations but not by plaintiff.  The Memorandum set forth the responsibilities, procedures, and objectives regarding the Liaison position, which was responsible to both organizations and had to work cooperatively with both of them.  The Memorandum memorialized the United Way and the AFL-CIO's agreement on how to discipline the Liaison.  The Memorandum in no way indicated it was a policy statement to the Liaison.

Moreover, plaintiff simply alleges she was aware of the Memorandum's terms at the time of its execution and participated in the negotiations with the United Way on its terms.  She has not alleged the United Way disseminated the memorandum to her, as the Liaison, after it was executed.  Plaintiff has also failed to allege any other manner in which the United Way indicated the Memorandum was an offer to her, as its employee.

We further point out Duldulao involved an employee handbook created by the employer, which was "'designed to clarify your rights and duties as employees.'" (Emphasis omitted.) Duldulao, 115 Ill. 2d at 491, 505 N.E.2d at 319.  In Wood v. Wabash County, 309 Ill. App. 3d 725, 726, 722 N.E.2d 1176, 1177 (1999), the Fifth District also dealt with an employer's person-nel policy handbook.  Such handbooks are written by the employer for its employees, which is vastly different from this case where the Memorandum was drafted to memorialize the employer's agree-

ment with a labor union.

Additionally, we note that, even if <u>Duldulao</u> applies to employers' contracts with outside parties, we disagree the United Way disseminated an offer of the employment terms in the Memorandum to plaintiff simply by negotiating the terms of the Memorandum with her as a representative of the outside party.  If that was the case, any employee who assists an employer in drafting an employee handbook or policy statement could bind the employer to the terms of the handbook or the statement regardless of whether the employer ever came up with a final version of the statement or handbook and/or distributed that final version to the employees.  Such a result is inconsistent with the presumption of employment at will and <u>Duldulao</u>.

Accordingly, we find the trial court properly concluded the Memorandum did not vest plaintiff with contractual rights under <u>Duldulao</u>.  Additionally, we note that, even if plaintiff has contractual rights pursuant to <u>Duldulao</u>, for the reasons discussed in the next section, the court properly dismissed her breach-of-contract claim because she failed to exhaust her contractual remedies.

### B. Third-Party Beneficiary

Plaintiff also contends she has contractual rights as a third-party beneficiary of the Memorandum.

We begin by noting the unusual nature of the Memoran-

dum.  In part, the Memorandum defines the working relationship between the United Way and the AFL-CIO.  It also creates the Liaison position and sets forth the job description, hiring process, the payment of benefits and union dues, annual salary increases, the development of a work plan, discipline procedures, and one job responsibility for that position.  Further, the Memorandum establishes a grievance procedure for resolving disputes regarding application and enforcement of the Memorandum that affect the Liaison and expressly states the AFL-CIO is the exclusive bargaining representative of the Liaison.  Thus, the Memorandum is also akin to a collective-bargaining agreement.  Additionally, the Memorandum is not a typical employment contract, as it is an agreement between the employer and the union, not the employer and employee.  Thus, the Memorandum does not fit neatly into one definitive type of contract.

Assuming arguendo plaintiff is a third-party beneficiary of the Memorandum, the Memorandum contains the aforementioned grievance procedures.  When a collective-bargaining agreement establishes grievance and/or arbitration procedures for disputes arising out of the agreement, an employee alleging a violation of the agreement must attempt to exhaust his or her contractual remedies before seeking judicial relief.  See Gelb v. Air Con Refrigeration & Heating, Inc., 356 Ill. App. 3d 686, 695, 826 N.E.2d 391, 400 (2005).  Moreover, in a pre-Duldulao handbook

case, the Fifth District concluded that, if a college handbook was a binding contract between the college and a nontenured teacher, the entire handbook was binding upon the parties, and thus the teacher had to first pursue the grievance procedures contained in the handbook. Jackson v. Board of Trustees of Junior College District No. 530, 22 Ill. App. 3d 898, 901-02, 317 N.E.2d 318, 320-21 (1974). Accordingly, in the area of employment law, courts have required the parties to exhaust dispute-resolution procedures in the contract before filing suit.

Moreover, dispute-resolution provisions in other types of contracts have been found to be a condition precedent to filing suit. See Ford Motor Co. v. Motor Vehicle Review Board, 338 Ill. App. 3d 880, 885-86, 788 N.E.2d 187, 192 (2003), citing Mayfair Construction Co. v. Waveland Associates Phase I Ltd. Partnership, 249 Ill. App. 3d 188, 619 N.E.2d 144 (1993); DeValk Lincoln Mercury, Inc. v. Ford Motor Co., 811 F.2d 326 (7th Cir. 1987). In Mayfair Construction Co., 249 Ill. App. 3d at 201, 619 N.E.2d at 153, the First District affirmed the conclusion that an owner materially breached a construction contract by failing to first submit the dispute between it and the contractor to the architect as provided for in the contract. In DeValk, 811 F.2d at 336, the Seventh Circuit found the mediation clause contained in the contract between the automobile dealership and the manu-facturer had to be strictly complied with before a party filed

suit.

Here, section III, paragraph nine of the Memorandum states that, "[i]f a dispute arises regarding the application or enforcement of this agreement that affects the Liaison (employee), the grievance resolution procedure is as follows." The Memorandum then provides for informal discussions and a formal, written grievance. The Memorandum defines "grievance" as "any dispute or disagreement between the parties with respect to the application, administration[,] or interpretation of the provisions of this agreement or arising out of matters controlled by [the] United Way which directly affect wages, hours[,] and terms and condition of employment." The aforementioned language makes the grievance procedures mandatory for disputes it covers. Plaintiff does not argue her claims fall outside the Memorandum's grievance procedures.

"[T]hird-party beneficiaries generally have no greater rights in a contract than does the promisee." United Steelworkers of America v. Rawson, 495 U.S. 362, 375, 109 L. Ed. 2d 362, 377, 110 S. Ct. 1904, 1913 (1990). Thus, since the AFL-CIO was required to resolve disputes through the grievance process, so was plaintiff. Moreover, the Memorandum expressly grants her the right to engage in the informal grievance procedure and to submit a formal grievance. However, plaintiff contends the following provision gives her the right to advance a

- 13 -

dispute against the United Way in any manner she chooses: "If the Liaison has a desire to advance the dispute, including moving the issue to mediation between the levels supported by the [AFL-CIO] s/he may do so at the Liaison's own expense." We disagree.

That provision does not, in any way, exempt her from following the grievance procedures, which is the Memorandum's dispute-resolution process. Further, the employee-advancement provision limits the employee's advancement to "levels supported by the [AFL-CIO]." The Memorandum indicates those levels include the grievance procedures and mediation. Since plaintiff is not exempt from the Memorandum's grievance procedures, she was required to have her dispute addressed by the grievance procedures.

Additionally, plaintiff did not allege any facts establishing an exception to the exhaustion of contractual remedies, such as (1) the United Way's repudiation of the contractual dispute-resolution procedures (see Patterson v. Carbondale Community High School District No. 165, 144 Ill. App. 3d 254, 261, 494 N.E.2d 240, 245 (1986)), (2) the futility of proceeding formally with contractual remedies (see Zelenka v. City of Chicago, 152 Ill. App. 3d 706, 714, 504 N.E.2d 843, 848 (1987)), or (3) the AFL-CIO's breach of its duty of fair representation (see Gelb, 356 Ill. App. 3d at 695, 826 N.E.2d at 400). We note plaintiff's statements in her complaint allege United Way repudiated the Memorandum's disciplinary procedures, not the dispute-resolution

- 14 -

procedures.  Her allegations are similar to those made by the plaintiffs in Patterson, 144 Ill. App. 3d 254, 494 N.E.2d 240.

In that case, the plaintiffs raised breach-of-contract claims against their former employer and contended they were not required to exhaust their contractual remedies because of the futility of doing so and the former employer's repudiation of the agreement.  The Patterson court concluded the plaintiffs had alleged their former employer's repudiation of the contract but not conduct by the former employer amounting to a repudiation of the contractual procedure set forth for the resolution of disputes.  Patterson, 144 Ill. App. 3d at 260-61, 494 N.E.2d at 245. The court explained the former employer's discharge of the plaintiffs did not point to the former employer's unwillingness to resolve the ensuing dispute by administrative rather than judicial means.  Patterson, 144 Ill. App. 3d at 261, 494 N.E.2d at 245.  Whether the former employer would have engaged in conduct amounting to a repudiation of the contractual dispute-resolution procedure could not be known absent the plaintiffs' attempt to use it.  Patterson, 144 Ill. App. 3d at 261, 494 N.E.2d at 245. Since the plaintiffs did not allege facts indicative of (1) the absolute futility of following the grievance procedure in the agreement under which they sought relief, (2) the defendant's repudiation of the grievance procedure, or (3) their own attempt to follow the grievance procedure, the Patterson court concluded

the plaintiffs were barred from seeking judicial relief and thus the trial court properly dismissed the breach-of-contract claims. Patterson, 144 Ill. App. 3d at 260-61, 494 N.E.2d at 244-45.

Like Patterson, plaintiff has alleged the United Way's repudiation of certain disciplinary procedures in the Memorandum but failed to allege any conduct by the United Way amounting to a repudiation of the Memorandum's procedure set forth for dispute resolution. In her complaint, plaintiff raised no allegations the United Way refused to comply with the grievance procedure. Moreover, the complaint is devoid of any indication plaintiff even made an attempt to resolve this issue under the grievance procedure. Thus, absent plaintiff's attempt to even use the grievance procedure, she cannot establish the United Way repudiated the Memorandum's grievance procedure and thus cannot pursue her claim by judicial means. See Patterson, 144 Ill. App. 3d at 261, 494 N.E.2d at 245.

Accordingly, even if plaintiff has contractual rights as a third-party beneficiary (or under Duldulao), she cannot bring a breach-of-contract suit because she did not comply with the grievance procedures contained in the Memorandum. Thus, the trial court also properly dismissed her complaint on this contractual theory.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's

dismissal of plaintiff's suit with prejudice.

Affirmed.

STEIGMANN, J., concurs.

MYERSCOUGH, J., specially concurs.

JUSTICE MYERSCOUGH, specially concurring:

I concur with the majority's result but write separately to address the issue of preemption.  Despite asking the parties to discuss preemption at oral argument, and despite  the fact that the majority of the discussion at oral argument concerned preemption, the majority does not address that issue.

Preemption can, as discussed below, have subject-matter jurisdiction implications.  Although United Way did not raise preemption before the trial court or on appeal, this court has a duty to sua sponte consider whether jurisdiction exists.  See In re Marriage of Mardjetko, 369 Ill. App. 3d 934, 935, 861 N.E.2d 354, 355 (2007).

Section 301 of the Labor Management Relations Act, 1947 (29 U.S.C. §185 (2000)) preempts state-law claims when the claims require the interpretation of a collective-bargaining agreement.  See Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 413, 100 L. Ed. 2d 410, 423, 108 S. Ct. 1877, 1885 (1988).  Moreover, section 301 reaches beyond collective-bargaining agreements and applies to "agreement[s] between employers and labor organizations significant to the maintenance of labor peace between them."  Retail Clerks International Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc., 369 U.S. 17, 28, 7 L. Ed. 2d 503, 510, 82 S. Ct. 541, 548 (1962).  The Memorandum between United Way and the AFL-CIO meets that definition here.

- 18 -

Whether a preemption defense can be forfeited depends on the nature of the alleged preemption.  The majority of federal courts addressing the issue have concluded that if preemption only alters the applicable substantive law, a party can forfeit the preemption defense by failing to raise it.  Wolf v. Reliance Standard Life Insurance Co., 71 F.3d 444, 449 (1st Cir. 1995); Dueringer v. General American Life Insurance Co., 842 F.2d 127, 130 (5th Cir. 1988); Johnson v. Armored Transport of California, Inc., 813 F.2d 1041, 1044 (9th Cir. 1987); Gilchrist v. Jim Slemons Imports, Inc., 803 F.2d 1488, 1497 (9th Cir. 1986).  If, however, preemption alters the forum applying the law, the defense cannot be forfeited because it is essentially an issue of subject-matter jurisdiction.  See International Longshoremen's Ass'n v. Davis, 476 U.S. 380, 393-94 n.11, 90 L. Ed. 2d 389, 402-03 n.11, 106 S. Ct. 1904, 1913-14 n.11 (1986) (holding that preemption can be raised at any time where Congress has vested jurisdiction exclusively in the federal courts because the state court had no power to act).

Therefore, the issue here is whether section 301 preemption affects the choice of forum or the choice of law; that is, whether section 301 gives federal courts the exclusive jurisdiction over suits for violations of contracts between employers and labor organizations representing their employees or merely provides that federal law will apply regardless of the location

of the suit.

The United States Supreme Court has expressly stated that federal and state courts have concurrent jurisdiction over section 301 claims. See Charles Dowd Box Co. v. Courtney, 368 U.S. 502, 506-07, 7 L. Ed. 2d 483, 486-87, 82 S. Ct. 519, 522 (1962). Both state and federal courts, however, must apply federal law in deciding the claims. See Local 174 v. Lucas Flour Co., 369 U.S. 95, 102, 7 L. Ed. 2d 593, 598, 82 S. Ct. 571, 576 (1962). Because section 301 provides for the application of federal law and not exclusive federal jurisdiction, the defense of preemption under section 301 can be forfeited. See National Metalcrafters, a Division of Keystone Consolidated Industries v. McNeil, 784 F.2d 817, 825-26 (7th Cir. 1986) (holding that a defendant may raise a section 301 preemption argument for the first time on appeal only in special circumstances); Sweeney v. Westvaco Co., 926 F.2d 29, 40, (1st Cir. 1991) (section 301 preemption can be forfeited); but see Flanagan v. Comau Pico, 274 Mich. App. 418, 426-27, 733 N.W.2d 430, 435 (2007) (holding that federal law preempts state law in a dispute governed by section 301 and a party may not forfeit its application). As a result, United Way forfeited that argument here.

However, in Gelb, a case cited by the majority, the First District stated that "[s]ection 301 grants exclusive juris- diction to federal district courts over suits for violations of

- 20 -

contracts between employers and labor organizations representing their employees." Gelb, 356 Ill. App. 3d at 692, 826 N.E.2d 398. At oral argument, both parties asserted that this statement, to the extent it held that federal courts have exclusive jurisdiction over violations of collective-bargaining agreements, was wrong. Although Gelb contains the statement that the jurisdiction is "exclusive," the Gelb court did not actually find that federal courts had exclusive jurisdiction, as the court proceeded to address the section 301 issue under federal law. Had the Gelb court meant that jurisdiction was exclusive in the federal court, the court would have dismissed the cause of action for lack of subject-matter jurisdiction.

For these reasons, I write to specially concur.