EMERSON ELECTRIC COMPANY *et al.*, Plaintiffs-Appellants, v. AETNA CASUALTY AND SURETY COMPANY *et al.*, Defendants-Appellees.

First District (5th Division)    No. 1—94—2887

Opinion filed June 14, 1996.

Daniel E. Reidy, Paul W. Schroeder, James A. White, and Peter N. Larson, all of Jones, Day, Reavis & Pogue, of Chicago, and Jerold Oshinsky, G. Weil, and Barbara M. Tapscott, all of Anderson, Kill, Olick & Oshinsky, of Washington, D.C., for appellants.

Robert C. Johnson, John I. Grossbart, and Donna J. Vobornik, all of Sonnenschein, Nath & Rosenthal, of Chicago, for appellee Travelers Insurance Co.

JUSTICE GORDON delivered the opinion of the court:

Plaintiffs Emerson Electric Company (Emerson) and 15 other corporate entities filed a declaratory judgment action against 62 insurance carriers, seeking a declaration of insurance coverage under numerous policies for actual and potential liabilities arising from environmental property damage at 57 sites diversely situated across the United States. One of those defendant-carriers, Travelers Insurance Company (Travelers), moved for partial summary judgment against Emerson, contending, *inter alia*, that its policy did not cover the risk as it pertained to a division of Emerson acquired after the inception of the policy. The trial court granted that motion and plaintiff Emerson appeals pursuant to Illinois Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

It is undisputed from the submissions of the parties that Travelers issued Emerson a comprehensive general liability policy with effective dates of April 1, 1961, to April 1, 1964 (1961 policy). After the April 1, 1961, inception of that policy, Emerson acquired the assets of U.S. Electrical Motors, Inc. (USEM), on July 31, 1962, and from that point on operated USEM as an electrical motors manufacturing division with plants and facilities at several sites in several states throughout the country. Subsequently, Emerson incurred environmental liabilities due to USEM's alleged practice, during the relevant policy period, of disposing of the waste generated by its operations into the environment at several sites.

In the instant action, Emerson sought a declaration that coverage of those environmental liabilities exists under the terms of the adjustable premium provisions of the 1961 policy, the relevant terms

of which will be set forth and discussed in the Discussion section which follows. Neither Emerson nor Travelers could locate a copy of the 1961 policy. In its motion for partial summary judgment, Travelers conceded, for purposes of that motion only, that it had issued the 1961 policy to Emerson and argued that its terms were the same as those in the 1956 policy that it had issued to Emerson. Travelers further argued that the adjustable premium provisions in that policy did not cover risks (referred to in the policy as hazards) such as USEM which Emerson acquired after the inception of the policy, but, rather, that pursuant to its other provisions, the policy only covered those Emerson hazards whose addresses were listed in the policy at the time of its inception. In that regard, Travelers argued that USEM, having been acquired after the inception of the policy, could not have been included in that list in the 1961 policy.

In support of its motion for summary judgment, Travelers submitted the affidavit of one of its vice-presidents in its law department, Marc Van Vooren, attached to which was a copy of the 1956 policy, and also submitted excerpts from Emerson's responses to Travelers' interrogatories and requests for admissions. In his affidavit, Van Vooren stated that Travelers was unable to locate a copy of the policy, or any evidence that it ever was amended or endorsed after its April 1, 1961, inception to include coverage for Emerson's acquisition of USEM on July 31, 1962. Van Vooren also stated that the 1956 Travelers policy, attached to his affidavit, is in a form that was generally utilized by Travelers from 1956 through 1966. Travelers also pointed to the copy of the 1956 policy, which contains among its provisions a schedule listing the addresses of Emerson hazards existing at the time of the inception of that policy. Travelers also referred to Emerson's responses to Travelers' discovery requests, which confirmed that Emerson purchased the assets of USEM on July 31, 1962, and that prior to that date, USEM was a separate corporate entity not affiliated with Emerson.

In its response to Travelers' motion for summary judgment, Emerson contended that that motion was premature, stating that Emerson needed more time to conduct discovery regarding the 1961 policy and its endorsements and premium adjustments. Emerson also argued that its USEM-related liabilities were covered under the terms of the purportedly identical 1956 policy. In support of its response, Emerson referred to the Van Vooren affidavit and the copy of the 1956 policy attached thereto, and additionally submitted Van Vooren's deposition testimony. In his deposition, Van Vooren testified that Travelers did not know if supplemental premiums had been collected from Emerson relating to Emerson's acquisition of USEM

after the inception of the 1961 policy period. Finally, Emerson pointed to an excerpt of the language of the **"Premium"** provision of the 1956 policy, set forth and discussed below, and argued that pursuant thereto, coverage existed for hazards not listed in the policy or existing as a division of Emerson at the time of the inception of the policy.

DISCUSSION

On appeal, Emerson contends that the trial court erred in granting summary judgment because the policy language at issue provides coverage for USEM's operations even though Emerson acquired USEM after the inception of the policy and, further, that summary judgment was premature because additional discovery is needed to establish the terms of, endorsements to, and premiums paid on that policy.

■ It is well established that a motion for summary judgment may be granted properly when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005 (West 1992); *e.g., Torres v. City of Chicago*, 261 Ill. App. 3d 499, 632 N.E.2d 54 (1994). In a ruling on a motion for summary judgment, the trial court must construe the pleadings, depositions and affidavits in the light most favorable to the nonmoving party. *E.g., First State Insurance Co. v. Montgomery Ward & Co.*, 267 Ill. App. 3d 851, 642 N.E.2d 715 (1994); *Stephen v. Swiatkowski*, 263 Ill. App. 3d 694, 635 N.E.2d 997 (1994). Moreover, if fair-minded persons could draw different inferences from the undisputed facts, summary judgment should not be granted. See *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204 (1992); *Anglin v. Oros*, 257 Ill. App. 3d 213, 628 N.E.2d 873 (1993). The construction of a contract is a question of law for the trial judge and thus suitable for summary judgment. *Srivastava v. Russell's Barbecue, Inc.*, 168 Ill. App. 3d 726, 523 N.E.2d 30 (1988). Appellate review of an order granting summary judgment is *de novo. E.g., Hesselink v. R.L. Perlow Corp.*, 265 Ill. App. 3d 473, 637 N.E.2d 575 (1994); *La Salle National Bank v. Skidmore, Owings & Merrill*, 262 Ill. App. 3d 899, 635 N.E.2d 564 (1994); *Myers v. Health Specialists, S.C.*, 225 Ill. App. 3d 68, 587 N.E.2d 494 (1992). In reviewing that ruling, the appellate court must consider "all the facts and circumstances" and law related to the case and determine whether the trial court was correct. *Fletcher v. Palos Community Consolidated School District No. 118*, 164 Ill. App. 3d 921, 518 N.E.2d 363 (1987); *Equity General Insurance Co. v. Patis*, 119 Ill. App. 3d 232, 456 N.E.2d 348 (1983).

The 1956 Travelers policy to which the parties refer in lieu of the missing 1961 policy grants coverage and provides for subsequent changes in that coverage pursuant to the following terms:

"The Travelers Insurance Company *** [a]gree[s] *with the insured, named in the declarations* made a part hereof, in consideration of the payment of premium *and in reliance upon the statements in the declarations* and subject to the limits of liability, exclusions, conditions and other terms of this policy *** [t]o pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

\* \* \*

**Changes.** *** [N]or shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy, signed by the President, a Vice President, Secretary or Assistant Secretary of the company; provided, however, changes may be made in the written portion of the declarations by a manager or general agent of the company when initialed by such manager or general agent." (Emphasis added.)

As is clear from the quoted language, the policy provides coverage to "the insured named in the declarations," and "in reliance upon the statements in the declarations." In that regard, the declarations provide as follows:

"DECLARATIONS ***

**Item 1. Named Insured** EMERSON ELECTRIC MANUFAC-TURING COMPANY AND EMERSON ELECTRIC WAREHOUSE COMPANY. **Address** 8100 WEST FLORISSANT AVE., ST. LOUIS, MO. Location of all premises owned, rented or controlled by named insured. SEE SCHEDULE 3931.

\* \* \*

**Item 5.** The schedules disclose all hazards insured hereunder known to exist at the effective date of this policy, *unless otherwise stated herein*: [blank]." (Emphasis in original).

Thus, it is clear that Emerson is the "insured, named in the declarations" and that the schedules attached to the policy "disclose all hazards insured" under the policy. Further, the hazards consist of various enumerated areas designated by location within which Emerson carried out its business operations. Under the policy in question, these specific hazards are itemized in schedule 3931, which provides a description of hazards covered by the policy listing the various premises owned and operated by Emerson at the time the policy took effect. It does not purport to encompass any locations acquired by Emerson after the inception of the policy. Furthermore, for many of

those premises listed in schedule 3931, there are additional "Premium bases" and "Rates" entries pertaining to adjustable premium computations, discussed more fully below. However, schedule 3931 does not provide such bases and rates entries for *every* hazard listed therein. Therefore, in its adjustable premium provisions, the policy further instructs that manuals exist to fill in those omissions, according to carefully enumerated procedures regarding premium adjustment. It is pursuant to these adjustable premium provisions, set forth as follows, that Emerson asserts coverage for its USEM-related liabilities:

> "**Premium.** The premium bases and rates for the hazards described in the declarations are stated therein. *Premium bases and rates for hazards not so described are those applicable in accordance with the manuals in use by the company.* The advanced premium stated in the declarations is an estimated premium only. Upon termination of this policy, the earned premium shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to this insurance. If the earned premium thus computed exceeds the estimated advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured.
>
> * * *
>
> **Inspection and Audit.** The company shall be permitted to inspect the insured premises, operations and elevators and to examine and audit the insured's books and records at any time during the policy period and any extension thereof and within three years after the final termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance.
>
> * * *
>
> The named insured shall maintain for each hazard records of the information necessary for premium computation on the basis stated in the declarations, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct." (Emphasis added.)

■ Emerson first contends that the terms of the "**Premium**" provision, and in particular the "hazards not so described" language contained therein, provide coverage for Emerson's USEM-related liabilities. In that regard, Emerson argues that the "hazards not so described" language indicates that the policy contemplated coverage for hazards not listed in the policy upon its inception, such as USEM. Emerson further argues that such coverage derives from Travelers'

corresponding right to inspect and to audit Emerson at the end of each policy year and to adjust the prepaid policy premium to account for subsequently added risks. We disagree. Emerson's argument narrowly and ultimately depends on the "hazards not so described" language, and in so doing misinterprets the meaning of that phrase in light of the limited function of the provision in which it is found and in light of the other above-referenced coverage provisions which also restrict coverage. See *Mayfair Construction Co. v. Waveland Associates Phase I Ltd. Partnership*, 249 Ill. App. 3d 188, 201, 619 N.E.2d 144 (1993) ("[t]he intent of the parties must be determined from the contract as a whole, and not from any one clause standing alone"). See also *Silverman v. Economy Fire & Casualty Co.*, 272 Ill. App. 3d 490, 650 N.E.2d 603 (1995) (stating that a court must interpret provisions of a contract in light of entire document); *Hannigan v. Country Mutual Insurance Co.*, 264 Ill. App. 3d 336, 636 N.E.2d 897 (1994).

The function of an adjustable premium provision is to enable an insured to obtain insurance coverage even though the risks covered by the policy upon its inception may fluctuate based on factors identified in the policy such as changes in the level of production, gross receipts or the number of employees. See generally *American Insurance Co. v. C.S. McCrossan, Inc.*, 829 F.2d 702 (8th Cir. 1987); *Over the Road Drivers, Inc. v. Transport Insurance Co.*, 637 F.2d 816 (1st Cir. 1980). For example, the prepaid estimated premium on a particular hazard may be reduced and a partial refund on that prepaid premium may be paid if the work force at a particular premises were to decrease by 10% during the first year of the policy period. Accordingly, under the policy terms set forth above, the "named insured" must pay an advance estimated premium and then, upon Travelers' calculation of the actual or "earned" premium after each policy year, the insured either may receive a partial premium refund or be forced to pay an additional premium. As noted, schedule 3931, which lists the addresses of the hazards covered by the policy, further provides the bases and rates upon which the earned premium calculations are based. Where the policy does not provide these figures for a particular hazard, the **"Premium"** provision instructs that Travelers has manuals to supplement such omissions. Contrary to Emerson's interpretation, the "not so described" language of the **"Premium"** provision modifies the phrase "premium bases and rates," and where such bases and rates are omitted for a particular hazard, they may be supplemented "in accordance with the manuals in use by the company." This interpretation is internally consistent with the missing bases and rates in schedule 3931. Hence, Emerson's contention that hazards may be added after the inception of the policy conflicts with the function of the adjustable premium provision.

Even more overridingly, Emerson's contention conflicts with the limitation of coverage under schedule 3931, which purports to limit those hazards to which coverage extends to "all hazards insured hereunder known to exist as of the effective date of this policy." USEM could not have been named on the 1961 policy's equivalent of schedule 3931 because Emerson acquired its assets on July 31, 1962. Moreover, the policy clearly provides for "**Changes**" in its coverage terms only according to clearly defined procedures which require both notice to Travelers of any such attempted changes and a formal endorsement authorizing those changes. Emerson offered no evidence that it satisfied these prerequisites to change the terms of the policy's coverage to encompass its USEM-related liabilities. As noted by the trial court:

> "The problem is [that] the lack of notification of [Travelers] of the after acquired sites and businesses doesn't [sic] give [Travelers] an opportunity to value the risk in any fashion. It is as if Commonwealth acquired Chrenobyl [sic]. [']Well, we got the policy. The rate is adjustable. We bought Chrenobyl [sic] over in Russia. Count the Russian workers and adjust the rate, what is left of them.['] It is a specious argument, I think."

Here, the adjustable premium provision contemplates changes in the risks associated with operations *existing at the time of the inception of the policy.* To suggest that after-acquired risks such as USEM could be covered under the 1961 policy, without more, ignores the contemplated coverage of the 1961 policy as reflected in its terms in their entirety. *Mayfair Construction Co. v. Waveland Associates Phase I Ltd. Partnership*, 249 Ill. App. 3d 188, 619 N.E.2d 144; *Silverman v. Economy Fire & Casualty Co.*, 272 Ill. App. 3d 490, 650 N.E.2d 603.

Emerson further contends that because the 1961 policy did not have any exclusions barring coverage for after-acquired risks, the policy therefore covered Emerson's USEM-related liabilities. However, it is axiomatic that a policy need not exclude risks it never covered. Emerson also contends that under the "**Inspection and Audit**" provision of the policy, Travelers had an *obligation* to conduct an audit of Emerson to find out what other property was acquired during the policy period and, therefore, to find out about the acquisition of USEM. However, no such obligation arises from the plain language of that provision, which states that "the company *shall be permitted* to inspect" (emphasis added) such that to the contrary, this language makes Traveler's inspection and audit of Emerson *discretionary.* In fact, the policy language indicates that it is *Emerson* that had a duty to account for changes in its covered hazards, insofar as the policy provides that the insured "shall send copies of" "records of the information necessary for premium computation" to Travelers.

In urging coverage for its USEM-related environmental liabilities, Emerson purports to rely on the decisions in *Massachusetts Bonding & Insurance Co. v. R.E. Parsons Electric Co.*, 61 F.2d 264 (8th Cir. 1932), *Capitol Indemnity Corp. v. North Hills Athletic Club, Inc.*, 182 Wis. 2d 511, 514 N.W.2d 879 (1994), *United States Fidelity & Guaranty Co. v. Newman*, 656 F.2d 457 (9th Cir. 1981), and *Container Supply Co., a Division of Hanlon Chemical Co. v. Fireman's Fund Insurance Co.*, 712 F. Supp. 871 (D. Kan. 1989). However, Emerson's reliance on these cases is misplaced.

*Massachusetts Bonding* and *Capitol Indemnity* were actions for coverage on insurance policies which included in their terms adjustable premium provisions. However, unlike here, in those cases the courts did not consider the question of whether an adjustable premium provision implies the right of an insured to obtain coverage for an after-acquired risk. Similarly, in *Newman*, the policy at issue contained an adjustable premium provision, but the question before the court involved the coverage of specific risks in existence at the inception of the policy and clearly covered by the policy, and not coverage for new "hazards" not in existence at the time of the inception of the policy. Finally, *Container Supply Co.* is inapposite because it stands for the limited proposition that a liability policy that covers a corporation also covers its wholly owned divisions. Notably, that case did not address whether the division at issue was acquired after the inception of the liability policy, nor did it involve an adjustable premium provision.

■ Emerson next contends that summary judgment was premature because further discovery is needed to establish the terms of the 1961 policy, and to establish whether supplemental premiums were paid with respect to the USEM acquisition or whether the policy was amended to include USEM in its coverage. Initially, we note that Emerson did not file a Rule 191(b) (134 Ill. 2d R. 191(b)) affidavit with respect to this contention in its response to Travelers' motion for summary judgment. Rule 191 provides in relevant part as follows:

"(a) *** Affidavits in support of and in opposition to a motion for summary judgment *** *shall be made* on the personal knowledge of the affiants; *shall set forth* with particularity the facts upon which the *** defense is based; *** shall not consist of conclusions but of facts admissible in evidence ***.

(b) When Material Facts Are Not Obtainable by Affidavit. If the affidavit of either party contains a statement that any of the material facts which ought to appear in the affidavit are known only to persons whose affidavits affiant is unable to procure ***, naming the persons and showing why their affidavits cannot be

procured and what affiant believes they would testify to if sworn, with his reasons for his belief, the court may make any order that may be just, either granting or refusing the motion \*\*\* or for producing papers or documents \*\*\*." (Emphasis added.) 134 Ill. 2d R. 191.

The "[f]ailure to comply with Rule 191(b) defeats an objection on appeal that insufficient time for discovery was allowed." *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1064, 599 N.E.2d 1183, 1192 (1992). Rather than file an affidavit with its response, Emerson alleged generally in its response and in its brief on appeal that discovery directed to certain enumerated parties "could shed light on" the 1961 policy. Thus, even if contained in a Rule 191 affidavit, those speculative allegations would be insufficient to overcome Travelers' motion for summary judgment. See *Schultz v. Hennessy Industries, Inc.*, 222 Ill. App. 3d 532, 584 N.E.2d 235 (1991) (rejecting request for further discovery based on Rule 191(b) affidavit that did not specify what prospective evidence would show). Here, Emerson has made no effort, by affidavit or otherwise, to show substantively what it might find or precisely how any further discovery might bear on its case. Consequently, the trial court was properly within the latitude of its discretion when it denied Emerson's request for further discovery. *Schultz v. Hennessy Industries, Inc.*, 222 Ill. App. 3d 532, 584 N.E.2d 235.

Moreover, apart from Emerson's Rule 191 failures, we do not believe that the trial court granted summary judgment prematurely, given Emerson's ample opportunity to discover facts in opposition to Traveler's motion for summary judgment. See *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 599 N.E.2d 1183. In that regard, the record reflects that Emerson had four months between the time Travelers filed its motion until the time Emerson's response was due; had one year between the time Travelers filed its motion and the time Travelers filed its brief on appeal; and has had in excess of two years since Emerson filed this lawsuit to conduct its proposed discovery; yet, despite these opportunities to conduct further discovery, Emerson has provided only that general, speculative list of possible parties who, if consulted, "could shed light" on that which it has failed until now to discover.

Moreover, in apparent contradiction to its own position that further discovery is necessary to determine the terms of the 1961 policy, Emerson has never denied that that policy and the 1956 policy have the same operative language. To the contrary, during oral argument Emerson asserted that it did not dispute that the terms "probably were the same" and that it expected to use the form language of the

1956 policy if the case were to proceed to trial. In that regard, we note the trial court's comment when it granted summary judgment to the defendant that Emerson bore the burden of producing the policy upon which its claim was predicated, a burden which Emerson was unable to satisfy notwithstanding the lapse of more than two years since its action was filed.

For the foregoing reasons, the summary judgment order of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS and HOURIHANE, JJ., concur.